## Appeal of Wm. H. Brown et al.

1. The taxing power of this Commonwealth is vested absolutely in the legislature. When not prohibited by the constitution, the only limitation in the exercise of that power is its own discretion.

2. " Offices, posts of profit, occupations and trades," are properly within the meaning of Article IX., Section 80, of the constitution.

3. In incurring a debt, or in increasing an existing indebtedness of the county, the county commissioners are not required to look behind the valuation of property established by the last preceding assessment, for the purpose of inquiring whether this valuation is upon an assessment, including items, not taxable property within the. meaning of the constitution.

October 27th, 1885. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

APPEAL from the Court of Common Pleas, No. 1, of *Allegheny county :* Of October and November Term, 1885, No. 59.

Appeal by Wm. H. Brown and sixteen other citizens and taxpayers of the county of Allegheny from a decree of said court dismissing a bill in equity filed. by them against the county commissioners of Allegheny County, praying for an injunction to restrain the said commissioners from entering into a contract for the erection of a court house and a jail for the said county at a price which, with the then existing indebtedness of the county, they alleged would be a sum beyond two per centum on the assessed valuation of the taxable property of the county, without first submitting the question of the proposed increased indebtedness to a vote of the qualified electors of the county at an election to be held for that purpose.

The partial destruction, by fire, of the court house at Pittsburgh, in May, 1882, devolved on the defendants below the duty of taking proper steps for the erection of a new court house. Following the recommendation of two successive grand juries, it was determined to remove the buildings remaining on part of the site of the old court house and erect a new court house thereon, and purchase additional ground in the rear of the court house lot, and erect a new jail thereon.

On March 12th, 1884, a contract was made with H. H. Richardson, of Brookline, Mass., for the preparation of plans for, and the supervision of, the erection of the proposed buildings—the architect to receive $125,000, or thereabouts, for his services.

Plans for said building were approved July 3d, 1884, and

soon thereafter advertisement was made for sealed proposals for the erection of buildings in accordance with said plans.

On August 18th the bids were opened, and on September 1st, 1884, the contract was awarded to Norcross Bros., of Worcester, Mass., for the sum of $2,243,024.

The assent of the electors of the county of Allegheny to the incurring of the debt to be created by the proposed contract had not been obtained, the defendants having assumed the right to authorize the incurring of such debt by their own vote.

On September 10th, 1884, the bill in this case was filed, and notice thereof duly served on the defendants. The plaintiffs in their bill alleged, *inter alia*, that the debt proposed to be incurred in the letting of said proposed contract, in connection with the existing indebtedness of said county, contracted since January 1st, 1874, exceeded two per centum of the taxable property therein, as fixed and determined by the last assessed valuation thereof; that the assent of the electors of said county to the proposed increase of indebtedness had not been obtained, and prayed, *inter alia*, that the defendants be enjoined from making or entering into the proposed contract with Norcross Bros.

On the said 10th day of September, 1884, after the bill had been filed, and notice of the filing thereof had been served on the defendants, the said defendants undertook to execute said contract, and by their answer avow that they signed, sealed and delivered the same on the day last mentioned.

The defendants, by their answer, deny the first above recited allegation of the plaintiffs' bill, and aver that the debt proposed to be incurred by said contract, in connection with the existing indebtedness of said county contracted since January 1st, 1874, does not exceed two per centum of the taxable property therein, as fixed and determined by the last assessed value thereof.

The Master, R. B. Carnahan, Esq., found that the assessed value of the real estate in the county of Allegheny, as shown by the annual assessment for the year 1884, was $195,503,480; and that the personal property, assessed as such, was $3,147,207, making an aggregate of $198,650,687.

Under objection on the part of plaintiffs, the Master received evidence showing the valuation put on offices, posts of profit, trades, professions and occupations at the last annual assessment, and ruled that the subjects of taxation last specified (which the official books showed were classified in the assessment under the title of "occupations,") were property within the meaning of the constitution and the tax laws, and that the

amount at which the same had been rated should be added to the valuation of the real and personal property, assessed as such, in order to ascertain the county's total assessed valuation of property. The Master's ruling on the point stated was affirmed by the court below, which was assigned for error.

The official books showed the total rating of occupations, as returned by the assessors for the year 1884, in the annual assessment for that year, to be $32,484,326.

The defendants were further allowed to prove an additional assessment, made between June and September, 1884, which showed an increase on occupations of $11,116,060, and on real estate of $359,246. It appeared in connection therewith, and the Master so found, that exonerations had been made to an amount in valuation of $2,510,075.

Deducting the sum last mentioned from the amount of assessments aforesaid, the Master found the total net assessed valuation of taxable property in the county of Allegheny, on September 10th, 1884, to be $240,100,244, two per centum whereon gives $4,802,004.88 as the amount to which the defendants below, by their own vote, according to the ruling of the Master and the decision of the court below, might increase the indebtedness of the county created since January 1st, 1874.

It was contended on the part of the plaintiffs below, on the other hand, that the total net assessed valuation of the taxable property is to be ascertained by deducting from the aggregate of the real and personal property, so assessed as aforesaid (viz., $198,650,687) one fourth of the exonerations aforesaid (viz., $627,518.75,—from which may be taken the amount of the "additional or supplemental assessment" of real estate, viz., $359,246, making a net reduction of $268,272.75), which gives the sum of $198,382,414.25; two per centum of which gives $3,967,648.29 as the limit of increase by the defendants below of the county's indebtedness created since January 1st, 1874.

It was found by the Master that the bonded indebtedness of the county of Allegheny, on September 10th, 1884, was $4,054,947.83, and that the indebtedness other than bonded, and called "floating," amounted to $116,325.10, making a total of $4,171,272.93. The total indebtedness on the 1st day of January, 1874, was $2,329,221.73, and the total amount of bonded indebtedness incurred since January 1st, 1874, and up to September 10th, 1884, was $2,650,000. The last named indebtedness was reduced by payment to the sum of $2,410,-000, and the former had been so reduced by successive pay-

ments that the total bonded indebtedness was as above stated on the 10th day of September, 1884.

The Master admitted evidence on part of the defendants below, of the amount of moneys in the treasury; of certain outstanding debts due the county, and of a certain tax credit with the state, and ruled that the aggregate of said moneys, debts and credit, should be deducted from the indebtedness of the county created since January 1st, 1874, in order to ascertain the net amount of such indebtedness.

The Master found that there was in the treasury on September 10th, 1884, the sum of $312,438.78. The evidence showed, however, that $20,000 thereof had been appropriated to the payment of certain bonds, called straight railroad bonds, maturing September 15th, 1884 (which were part of the county's debt created prior to January 1st, 1874, and was so applied and paid out on September 15th, 1884, and thereafter from day to day, pursuant to the appropriation aforesaid, and that no part of the moneys in the treasury had been appropriated to the payment of any part of the bonded indebtedness created since January 1st, 1874, but that said moneys were applicable to the general running expenses of the county, together with the interest on bonds, etc. The Master further found solvent debts due the county amounting to $3,611.71, and a credit of $323,943.18 in favor of the county from the Commonwealth, for overpayments of state tax on watches and moneys at interest, by individuals, for the years 1870 to 1879, inclusive, for which overpayments, by a resolution of the state revenue board, the county of Allegheny is to be credited on future accounts of state tax collectible from the county.

These various credits the Master found to aggregate the sum of $639,994.67, and deducting the same from the sum of the bonded and floating debt incurred since January 1st, 1874, remaining unpaid September 10th, 1884, viz., $2,526,325, the Master found the net amount of the latter debt, at the date last mentioned, to be $1,886,330.33. The Master's ruling and findings hereon were excepted to by plaintiffs. The exceptions were overruled and the Master's conclusions were sustained by the court, which is assigned for error.

The Master found the exact amount of the proposed increase of the county debt, under the contract with Norcross Bros., with the compensation to be paid the architect, to be $2,358,024.

The Master summed up his computations by the following schedule:

[Appeal of Wm. H. Brown.]

| | | |
|---|---|---|
| Total net assessed valuation of taxable property in the county of Allegheny, on September 10th, 1884, | $240,100,244 | 00 |
| Two per centum on same, . . . . . | 4,802,004 | 88 |
| Net indebtedness of the county incurred since the 1st of January, 1874, and existing on September 10th, 1884, | 1,886,330 | 33 |
| Total amount of proposed increase as above ascertained, | 2,358,024 | 00 |
| Total, . . . . | $4,244,354 | 33 |
| Two per centum of assessed valuation, . . . | 4,802,004 | 88 |
| Deduct the sum of the proposed increase of the debt, and the debt incurred since January 1st, 1874, . . | 4,244,354 | 33 |
| Difference, . . . | $557,650 | 55 |

Excluding the valuation of " occupations " from the total net assessed valuation of the county contained in the above statement, gives, as hereinbefore shown, $198,382,414.25 as the total assessed valuation of the real and personal property of the county, and two per centum thereof, viz., $3,967,648.29, the maximum amount, as contended on part of appellants, to which the commissioners, by their own vote, could lawfully increase the debt of the county created since January 1st, 1874, which last mentioned sum is less by $276,706.04, than the amount to which the contract with Norcross Brothers increases said debt after all the reductions thereof made by the Master. And if the proposed increase, $2,358,024, be added to the actual amount of county debt created since January 1st, 1874, remaining, in fact, unpaid September 10th, 1884, which the Master found to be $2,526,325.10, the sum thus obtained, viz., $4,884,349.10, exceeds by $916,700.81 two per centum of the last assessed valuation of the taxable real and personal property of the county.

The plaintiffs filed *inter alia* the following exceptions to the report of the Master.

1. The master erred in finding that by the fifth section of the Act of the 15th of April, 1834, offices, posts of profit, trades and occupations are classed under the designation of " real and personal property."

2. The Master erred in finding that the subjects of taxation classified in the assessment in evidence in this case under the title of " occupations," are *property* within the meaning of the Constitution and the Acts of Assembly relative to taxation; that it is the net income derived therefrom that is taxed, and that the amount at which the same have been rated constitute a part of the " assessed value of the taxable property " of the county.

3. The Master erred in including the assessment of occupations in the aggregate of the valuation of the taxable property of the county.

These with all others the court dismissed filing the following opinion and decree.

There can be no doubt that " offices, posts of profit, occupations and trades," are *property*, not only in the general sense of being the subjects of dominion or ownership, but also in the sense of the Declaration of Rights of the Constitution of 1874.

At the time of its adoption, and for seventy-five years before, they had been specifically made the subject of assessment and taxation in Pennsylvania. The members of the Constitutional Convention and the people must be assumed to have known this, and therefore, taken in the absence of clear evidence to the contrary, to have used the terms " assessed valuation of property," and " assessed value of taxable property," in accordance with such fact.

In the first and ninth sections of the Declaration of Rights the word " property " is used in its most comprehensive legal sense. In the tenth section, " private property " means not only real and personal property ordinarily so called, but every kind of subject or thing which it is possible to take from one owner and give to another. In the article relating to taxation and finance, section second, rendering void all laws exempting property from taxation except as provided in the first section, it is obviously used in a sense as broad and comprehensive as the subjects of taxation, and it seems therefore to follow that in the case in hand the same general significance should be given to the word *property*, where it occurs in the eighth section, limited only by the qualification of its being taxable under the law and duly assessed. But the argument of the Master is to my mind so clear and convincing that it would be futile to attempt to add anything to its force.

For the reasons given by him, we fully concur in his conclusions, and therefore dismiss the exceptions filed to his report on the part of plaintiffs.

And now, February 7th, 1885, this cause came on to be heard, and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed that plaintiffs' bill be dismissed at their costs.

The plaintiffs thereupon took this appeal assigning for error, *inter alia*, the decree of the court dismissing their exceptions to the Master's report, and dismissing their bill

*R. E. Stewart*, for appellants.—The main controversy in this case arises out of the interpretation to be given to the phrase " taxable property," as found in the State Constitution and in the act of April 20th, 1874, regulating the manner of increasing the indebtedness of municipalities, etc.,—whether

the expression includes offices and posts of profit, professions, trades and occupations as subjects of taxation.

The error in regard to the alleged designation of the various subjects of taxation under the general denomination of "real and personal property" will appear from an inspection of the several Acts of Assembly in relation to taxation: Act 15th of April, 1834, P. L. 511; Act of 15th May, 1841, § 8, P. L. 395; Act of 27th July, 1842, P. L. 445; Act of 3d April, 1851, Act of 8th May, 1854, P. L. 617.

In no place throughout these Acts is the expression taxable property, or real and personal property or estate used as comprehending all the subjects of taxation, nor are offices and posts of profit, professions, trades and occupations designated as property in any of our tax laws.

That the framers of the Constitution had regard to the distinctions in our tax laws hereinbefore noted and conformed to the phraseology thereof, would appear from the discrimination in the use of terms employed in Sections 1 and 8 of Article IX. In Section 1, which provides for uniformity of taxation, the various objects of taxation are not designated, as in the constitutions of most other states, by the term, property, but by the more comprehensive term, subjects. The language is, "All taxes shall be uniform (not on the same species of property, but) upon the same class of subjects," etc. And had it been intended in the eighth section to include all subjects of taxation, we should have found in it the use of terms recognized in our tax laws as appropriate to express such comprehensive designation of the various objects of taxation.

It is to be presumed furthermore that the framers of the Constitution and the people who adopted it had regard to the judicial interpretation which had been given to certain terms found in our tax laws: Goepp *v.* the Borough of Bethlehem, 4 Casey 249; Mifflintown *v.* Jacobs, 19 P. F. S. 151; Hunter's Estate, 6 Barr 97.

The language of Mr. Justice SERGEANT in Deitz *v.* Beard, 2 Watts 170, is pertinent, "Where particular terms are used to describe the objects of taxation, they should be construed according to their popular acceptation, not by any refined or strained analogies, and especially where that acceptation corresponds with the use of those terms in recent legislative enactments."

We oppose to the Master's conclusion in general on this branch of the case, the definition of the phrase in question given in Desty on Taxation, vol. 1, p. 318, which is as follows: "The words 'taxable property' mean property in the ordinary sense, susceptible of ownership or possession, unless a different meaning is affixed in the context, or unless the plain

object of the law will be defeated if they are not held to cover subjects of taxation which are not property in the ordinary sense :" Waring v. The Mayor of Savannah, 60 Ga. 93; Banger's Appeal, 16 W. N. C. 289.

*S. H. Geyer* and *George Shiras, Jr.*, for appellees.—1. The Constitution, in the eighth section of article 9, and the Act of April 20th, 1874, made the assessment itself the measure of the commissioner's powers, and they were warranted in taking the assessment as conclusive without inquiring into the particulars of which it was composed, just as they could ·not undertake to disregard it by claiming, however, truthfully, that the assessment ought to have included matters that the assessors failed to include.

2. There is a satisfactory answer to the complainants' contention in the fact that offices and posts of profit, professions, trades and occupations are declared by law to be lawful subjects of taxation and are taxable property within the meaning of the Constitution and the Act of 1874.

When the Constitution, in the 8th § of Art. 9 and the Act of April 20th, 1874, speak of *taxable property*, they mean property made taxable by law, or, in other words, they are to be interpreted in the light of the existing laws. This is the canon of interpretation laid down as the result of the authorities, by Dillon; see vol. 2, sec. 772 and note.

Now the existing law, relative to and regulating taxation and assessments in the case of counties, is the Act of April 15th, 1834; and it provides in terms that the property that shall be the subject of taxation and assessment shall be real estate; all horses, mares, geldings and cattle above the age of four years; and all offices and posts of profit, professions, trades, and occupations.

And it was plainly in view of such provisions that the Act of 1874 prescribed the total of such an assessment should be the standard to regulate the conduct of the commissioners in creating indebtedness: Banger's Appeal, 16 W. N. C., 289, so far as applicable, is authority for the appellees.

Chief Justice MERCUR delivered the opinion of the court, January 4th, 1886.

This bill seeks to enjoin the commissioners of the county of Allegheny against making a contract for the erection of a new court-house and jail, which they allege will create an indebtedness in excess of the constitutional limit.

Art. IX., sect. 8, of the Constitution, *inter alia*, prohibits any municipality from increasing its indebtedness to an amount exceeding two per centum upon its assessed valuation of prop-

erty without the assent of the electors thereof at a public election.

The assent of the electors was not obtained to the debt in question.

The appellants do not now allege that the increase of debt, rendered necessary by this contract, exceeds two per centum upon the assessed value of the taxable property in the county, as such assessed value was fixed and determined by the last preceding assessed valuation thereof. They, however, attack the validity of that assessment as a proper basis to determine the constitutional limitation of the indebtedness of the county. They claim that offices, posts of profits, and occupations were improperly included as subjects of taxation. This constitutes the only objection urged on the argument.

If these items were properly within the meaning of the section of the Constitution cited, the proposed increase of indebtedness does not reach the limitation imposed thereby.

It is claimed that the term taxable property, in its ordinary sense, means such as is susceptible of ownership or possession. It is true there is not such a property in an office or occupation as to subject it to seizure on execution, yet the possessor thereof has a property therein—and the law gives him a remedy when his reasonable profits derived therefrom are unjustly assailed, and his skill and proper conduct therein maligned.

Why, then, does not the constitutional power of taxation extend to, and for all purposes fairly include such taxation?

The taxing power of this commonwealth is vested absolutely in the legislature. When not prohibited by the Constitution, the only limitation in the exercise of that power is its own discretion: (Penna. R. R. Co. *et al. v.* The City of Pittsburgh, 14 Pitts. Leg. Jour. 289.)

The Constitution, which went into effect in January, 1874, does not name the specific articles or kinds of property subject to taxation. It wisely left that to sound legislative discretion. There is nothing therein indicating an intention to prohibit the imposition of taxes on any species of property previously subjected thereto.

Section 8, of the Act of 11th April, 1799, (3 vol., Laws of Pa., 395), subjected to taxation, offices and posts of profit, trades, professions and occupations, with some exceptions.

The Act of 15th April, 1834, in substantially the same language, recognized the same as property, and subjected them to taxation.

With the single exception of the salaries of law judges, protected from reduction by the Constitution (Commonwealth *v.* Mann, 5 W. & S. 403), the exercise of legislative action in taxing such subjects generally has not been questioned.

[Bryar's Appeal.]

When the people gave effect to the present Constitution, the presumption is that they acted with a knowledge and understanding of the species of property which had been subjected to taxation for three quarters of a century.

Section 2, of the Act of 20th April, 1874 (Pur. Dig., p. 1928), *inter alia*, declares: "Any county . . . . . may incur debt or increase its indebtedness to an amount in the aggregate not exceeding two per centum upon the assessed value of the taxable property therein, as fixed and determined by the last preceding assessed valuation thereof."

The tax had been laid at the commencement of the year with all due formality. The subjects on which the taxes were imposed had not been questioned. The last preceding assessment had established the valuation thereof. When the county commissioners entered into the contract in question in September following, they had a right to adopt that valuation as the basis of their action. They did so. They were not required to look behind it. They recognized its validity, and made their action conform thereto. Whatever questions might arise as to the character of these items for some purposes, yet for the purpose we are now considering, they were correctly treated as taxable property within the meaning of the Constitution. The case of Banger's Appeal, (16 W. N. C., 289), is not in conflict with this conclusion. That was an attempt to impose an income tax under an invalid city ordinance taxing occupations.

> Decree affirmed, and appeal dismissed at the costs of the appellants.